Upon review of all the competent evidence of record with reference to the errors assigned, and finding no good ground to reconsider the evidence, receive further evidence, or to rehear the parties or their representatives, the Full Commission AFFIRMS and ADOPTS the Opinion and Award of the Deputy Commissioner as follows:
The Full Commission finds as facts and concludes as matter of law the following which were entered into by the parties at the hearing before the deputy commissioner and in a Pre-Trial Agreement dated October 22, 1996, as
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employment relationship existed between the plaintiff-employee and defendant-employer at all relevant times herein.
3. The defendant-employer was a duly qualified self-insured at the time of the alleged injury by accident.
4. On December 10, 1993, the plaintiff-employee's average weekly wage was $491.48, yielding a compensation rate of $327.82.
5. The parties stipulated into evidence the following documents:
a) a stipulated packet of the plaintiff's medical records;
 b) a printout from the Employment Security Commission detailing unemployment benefits to the plaintiff;
 c) a copy of the transcript of the recorded statement of the plaintiff taken by Graham Brown on February 10, 1994;
 d) a copy of plaintiff's Claimant Statement dated December 13, 1993; and
e) George Eubank's affidavit dated February 27, 1997.
*************
Based upon the competent evidence of record herein, the Full Commission adopts the Findings of Fact of the deputy commissioner as follows:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, the plaintiff-employee was 42 years old, was a veteran of the United States Navy, and had experienced a long history of problems with both of his shoulders, including surgery on both shoulders.
2. The plaintiff-employee's left shoulder was traumatically dislocated in the late 1970's and subsequent to that time, he experienced multiple non-traumatic dislocations. In 1981, plaintiff-employee re-dislocated his shoulder playing pool. In 1982, surgeons performed a second procedure to his left shoulder ("Bristow procedure") in an attempt to address his problem with recurrent dislocations and instability. Plaintiff-employee experienced numerous dislocations of his left shoulder after 1982, including an incident where a young child pulled his left shoulder out of joint.
3. The plaintiff-employee began working for the defendant-employer as a truck assembler on November 19, 1993. His assembly line duties included installing axle shafts and brake assemblies on truck axles. The plaintiff-employee's job did not require him to perform overhead lifting.
4. The plaintiff-employee testified that on December 10, 1993, only ten days after he began working for defendant-employer, he was performing his regular job duties in his customary manner when he lifted a single brake drum and felt a sudden "pop" in the left side of his neck. The plaintiff-employee testified that he experienced pain in his neck and left shoulder. The plaintiff-employee did not immediately report this incident to his supervisor, although he was aware of the defendant-employer's policy requiring employees to immediately report all injuries to a supervisor.
5. The plaintiff-employee's supervisor, Jack Freeman, conducted an unscheduled employee evaluation of the plaintiff-employee on December 10, 1993, due to reports that the plaintiff-employee's job performance was unsatisfactory. The plaintiff-employee did not report an injury to Jack Freeman at that time, nor that the job caused the plaintiff-employee any neck or left shoulder discomfort. At the end of the evaluation, Jack Freeman told the plaintiff-employee that his performance must improve before the next regular evaluation scheduled for December 17, 1993.
6. On December 13, 1993, the plaintiff-employee completed a Claimant's Statement. In the statement, the plaintiff-employee reported that he injured his neck and left shoulder as a result of "accumulative" and "continuous lifting of brake drums." The plaintiff-employee specifically indicated that his injury "did not occur by lifting a particular brake drum."
7. Later, on December 13, 1993, the plaintiff-employee presented to First Health in Gastonia. The plaintiff-employee gave the doctors at First Health the same history as detailed in his Claimant's Statement. The doctors at First Health referred the plaintiff-employee to Dr. David N. DuPuy, an orthopedist.
8. The plaintiff-employee presented to Dr. DuPuy on December 17, 1993. The plaintiff-employee once again gave a history of injuring his neck and shoulder while lifting multiple brake drums and primarily complained of pain in the base of his neck. Plaintiff-employee did not complain of thoracic pain. Dr. DuPuy diagnosed plaintiff-employee's condition as an acute cervical strain with a left shoulder sprain and referred him to physical therapy.
9. On December 28, 1993, plaintiff-employee complained for the first time of a stabbing pain in his mid-back near the inferior border of the scapula on the right and reported that his pain radiated downward from his neck. However, the plaintiff-employee did not complain of pain radiating from his thoracic spine around to his chest. Dr. DuPuy related these complaints to a continuation of the plaintiff-employee's neck difficulties, as opposed to a new thoracic problem. Dr. DuPuy opined that if a thoracic disk or thoracic nerve was causing the plaintiff-employee to complain of mid-back pain, plaintiff-employee would have complained of pain that radiated transversely from the thoracic spine around to the chest.
10. On January 27, 1994, the plaintiff-employee did not complain of pain in his shoulder or in his mid-back. Dr. DuPuy released the plaintiff-employee to return to work without restrictions, effective January 31, 1994, and without having sustained any permanent partial impairment of his neck or shoulder.
11. Dr. DuPuy examined plaintiff-employee intermittently between March 3, 1994 and June 21, 1994. At no time during these examinations did Dr. DuPuy uncover objective evidence of a neurologic deficit. During his last visit with Dr. DuPuy on June 21, 1994, plaintiff-employee complained of pain in his left shoulder. Plaintiff-employee told Dr. DuPuy a young child had pulled his left shoulder out of joint two days previously. Plaintiff-employee also told Dr. DuPuy he had experienced four dislocations of his left shoulder since June of 1993. Dr. DuPuy diagnosed plaintiff-employee with multi-directional instability of the left shoulder and recommended plaintiff-employee undergo a left shoulder reconstruction.
12. On October 7, 1994, Dr. Kevin Speer performed a diagnostic arthroscopy of plaintiff-employee's left shoulder at the V.A. Hospital in Durham, North Carolina. As a result of this operation, Dr. Speer diagnosed plaintiff-employee's condition as recurrent anterior shoulder instability. On January 20, 1995, Dr. Speer performed a re-do left anterior shoulder reconstruction with plication of large rotator internal defect.
13. Dr. Speer opined that the manual labor depicted could not cause the condition from which the plaintiff-employee was suffering at the time he first presented to the V.A. Hospital, nor did it cause the plaintiff-employee's shoulder to become more unstable. According to Dr. Speer, the condition from which plaintiff-employee was suffering results from a traumatic activity like a fall or a sports injury. Dr. Speer further determined that the plaintiff-employee's shoulder problems long pre-dated his alleged injury of December 10, 1993 and that there was no objective evidence that the condition of the plaintiff-employee's left shoulder had changed at all as a result of the plaintiff-employee's alleged occupational injury.
14. Dr. Mark Lyerly, an orthopedist, first examined the plaintiff-employee on May 8, 1996. Although the plaintiff-employee only complained of neck and shoulder pain to his initial treating physicians, the plaintiff-employee informed Dr. Lyerly he experienced the immediate onset of pain in his thoracic back on December 10, 1993. Dr. Lyerly's examination revealed the plaintiff-employee complained of pain that radiated from his thoracic spine around to his chest. An MRI conducted in May of 1995 revealed a herniated disc at T5-6. Dr. Lyerly treated the plaintiff-employee conservatively, and after three epidural steroid injections, the plaintiff-employee reported he was experiencing substantially less pain in his mid-back. An MRI examination conducted on September 3, 1996 revealed the herniated disc at T5-6 had substantially subsided. Dr. Lyerly did not recommend plaintiff-employee undergo thoracic disc surgery.
15. Dr. Lyerly opined that the plaintiff-employee's complaints of a pain which radiated from his thoracic spine around to his chest allowed him to relate plaintiff-employee's problem to a thoracic disc as opposed to his cervical spine. Dr. Lyerly opined that a 1994 incident where the plaintiff-employee had trouble getting up out of the bathtub was the likely cause of his herniated thoracic disc.
16. The competent evidence in the record fails to establish that plaintiff-employee experienced, on December 10, 1993, a specific traumatic incident to his neck, nor an interruption of his normal work routine and the introduction thereby of unusual conditions likely to result in unexpected consequences, resulting in an injury to plaintiff-employee's left shoulder.
17. The competent medical evidence in the record does not place the plaintiff-employee at an increased risk of developing recurrent anterior shoulder instability as compared to members of the general public not similarly exposed, nor does it reflect that the plaintiff-employee's employment with the defendant-employer significantly contributed to his development of recurrent anterior shoulder instability.
18. The competent evidence of record fails to establish that plaintiff-employee's employment with the defendant-employer caused plaintiff-employee to develop synovitis of the left shoulder, nor that the plaintiff-employee's thoracic back condition is causally related to the incident of December 10, 1993.
*************
Based on the foregoing stipulations and findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. The plaintiff did not sustain an injury by accident or specific traumatic incident arising out of and in the course of his employment with the defendant on or about December 10, 1993. N.C. Gen. Stat. § 97-2(6).
2. The plaintiff has not contracted or developed a disease or condition which is due to causes and conditions characteristic of and peculiar to the plaintiff's employment with the defendant, and therefore, the plaintiff does not have an occupational disease as defined by N.C. Gen. Stat. § 97-53(13).
3. Trauma in plaintiff's employment with defendant-employer did not cause the plaintiff to develop synovitis in his left shoulder. Consequently, plaintiff has not proven that he has an occupational disease under N.C. Gen. Stat. § 97-53(20).
4. The plaintiff's unemployment payments in 1994 were not charged to the defendant, thus the defendant is not entitled to a credit for these payments under N.C. Gen. Stat. § 97-42.1.
*************
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. The plaintiff's claim is and under the law must be DENIED.
2. Each side shall bear its own costs, except that the defendants shall also pay expert witness fees of $470.00 to Dr. Mark Lyerly, and $705.00 to Dr. David DuPuy.
 S/ __________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/ ________________ J. HOWARD BUNN, Jr. CHAIRMAN
S/ ______________ LAURA K. MAVRETIC COMMISSIONER